[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[MEMORANDUM OF DECISION]
The plaintiff husband commenced this action for a dissolution of marriage claiming adultery and irretrievable breakdown, by complaint returnable July 20, 1993. He also seeks a fair and equitable division of personal property, and other relief, as on file. The defendant wife appeared by counsel, filed an answer admitting that the marriage has broken down irretrievably and denied adultery. In her cross complaint, she alleges that the marriage had broken down irretrievably, sought a dissolution of the marriage, alimony, and equitable division of real and personal property, and other relief. Each party CT Page 4584 testified and a number of documentary materials, including income tax returns, were introduced into evidence. The taking of evidence was completed on April 8, 1994, and the court granted the parties until April 22, 1994 to file additional information in the form of a stipulation on the issue of whether parties would file joint federal and state income tax returns for 1993 and the disposition of any tax refunds or liabilities for 1993 and prior years. The court and the parties therefore deemed the trial to be completed as of April 22, 1994.
From the evidence, the court finds as follows:
The plaintiff husband married the defendant wife at Norwich, Connecticut, February 2, 1985. Her birth name is Colleen A. Nelson, and her prior married name is Colleen A. Coats. The husband has been a resident of this state for at least one year before the filing of the complaint on July 15, 1993. All statutory stays have expired, and the court has jurisdiction.
The parties have no minor children issue of their marriage. No other children were born to the wife since the date of the parties' marriage.
Neither party is a recipient of public assistance. This is the wife's third marriage, the husband's second. Each has children from prior marriages. One of the wife's children, her younger daughter, is 16 years old.
The husband will be 39 years old May 20, 1994, is in good health, and is a high school graduate with one year of college. He had worked during his entire career of almost twenty years for Electric Boat as a welder and later as a welding instructor until he was laid off in September, 1993 as a result of the economy and downsizing of the defense industry. In good years, with overtime, such as 1990 and 1992, he earned $46,291 and $51,000 respectively. He has been unemployed since his layoff and collects $317 in unemployment compensation per week gross, and at the time of trial, had exhausted 25 weeks of the initial 26-week benefit period. He is attending the Dislocated Defense Worker Training Program five days a week to learn the HVAC trade. He expects to graduate October, 1994. There is no evidence of the probability of his acquiring employment upon graduation, nor of his potential earnings in his new career. CT Page 4585
The wife will be 42 years old May 10, 1994 and is a high school graduate. She is in good health although she had surgery for fibrous tumors in 1993. She received training as a medical secretary and worked for much of the marriage in various secretarial-type jobs including at a hospital and for a CPA. She also worked as a retail store clerk. She now lives in Florida and works as a registrar for a cancer treatment center and earns $320 per week gross and $250 per week net. She has medical insurance benefits in her job. She receives minimal and sporadic child support for her minor child.
The parties began living together several years before their marriage, in a home owned by the plaintiff's father, later purchased by the plaintiff from his father in 1986 for about $50,000. At the time, the defendant was on AFDC and had custody of her two minor daughters, and had no assets. The plaintiff treated her children as his own; indeed, her younger child believed until recently, that the plaintiff was her father.
At some point, the defendant began to believe that the plaintiff was unfaithful to her. She testified about odd phone calls and hours. The plaintiff, however, worked a lot of overtime, including double shifts, and denied any infidelity. He described the wife as a good homemaker and a great cook, and claims he also did housework, including the laundry and ironing. The wife assisted in arranging visitation with his children from a prior marriage and negotiating child support claims of his ex-wife. She provided him with moral support, as he did for her.
The wife's mother, who lived in Florida, was stricken with cancer, and the wife began going to her mother's assistance often, leaving her children with the plaintiff who cared for them.
Although she has a large number of siblings who reside in Florida she began going there every month since September 1992, staying for one to two weeks at a time, assisting her mother, until her mother died in April, 1993. The parties communicated less and less.
The defendant came back to Connecticut, removed her personal property from the house, quit her hospital job, and went to Florida to stay. She has developed a relationship with another man. On the state of the evidence, the court finds that CT Page 4586 the marriage has broken down irretrievably, and that a greater share of the responsibility for the breakdown must be borne by the wife.
The parties have very modest assets which were acquired during the marriage. These include the family home at 20 Beechwood Boulevard, Norwich, valued at $80,000 and subject to a mortgage of $37,217, leaving an equity of $42,783. This house was acquired by him from his father at what the court concludes was a less than arm's length transaction. The husband obtained a $45,000 first mortgage to purchase the house and may have added $5,000 in cash.
The court believes the house had to be worth in the area of $60,000 at the time of purchase and has appreciated only $20,000. The husband also has an SSIP account worth $5,000 which is taxable upon withdrawal, and an EB pension which is vested and would provide a monthly benefit of $460.77 upon his retirement at age 65.
The wife has an inheritance of $4,300 from her mother's estate. They each have motor vehicles of modest value. The wife accumulated over $6,000 from her earnings as of late 1992, which she termed the `window fund' The money was intended for new windows in the family home. However, she spent it all for her own purposes and on her trips to Florida. The husband obtained a home equity loan, shown on his financial affidavit, which may or may not be secured by a lien on the house. The proceeds of that loan were used to pay off the wife's student loan of about $3,300 and to purchase her present vehicle at a cost of $5,374.
The balance of the husband's equity loan is now $9,280. In addition, he has a $2,500 loan against his SSIP and a student loan of $2,059, which he need not repay until he returns to work.
The wife reports $1,300 in liabilities on her financial affidavit, and the husband has agreed to pay $366 of the wife's medical bills he shows on his affidavit.
The court also finds an arrearage due the wife from the husband of $600.
Although the husband has earned greater sums and CT Page 4587 commanded greater salaries than the wife has in the past, his present earning capacity is unknown. Her employability is greater than his, as she is now employed, and he is not. His 19 years in the defense industry appears no longer marketable, and the parties' vocational skills appear on a par. The parties appear to have equal opportunities in the future to acquire capital assets and income. They now have almost equal incomes, and her position is more secure than his.
The court also finds that the husband's monetary contributions to the marriage were greater than those of the wife; their non-monetary contributions were about equal. The court also notes that the wife has already obtained, or had the benefit of, significant assets acquired during the marriage, including the car, her student loan pay off, the credit union amount of $6,000, totalling about $15,000, plus her inheritance, while the husband is liable for the equity loan balance now $9,280.
The parties filed a stipulation that they expect federal and state income tax refunds totalling $1,124 for 1993 and tax liabilities of more than $688 for prior years.
The court has considered all of the criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the evidence and the findings set forth above and orders as follows:
(1) A decree dissolving the marriage on the ground of irretrievable breakdown may enter.
(2) No alimony is awarded to either party.
(3) The plaintiff husband shall take, own and have, free of any claims of the wife (except as stated hereinafter), the real estate described as No. 20 Beechwood Boulevard, Norwich, Connecticut, subject to all encumbrances thereon which he shall pay and save the defendant harmless therefrom.
(4) The plaintiff shall transfer to the defendant, by Qualified Domestic Relations Order (QDRO), the sum of $1,000 from his SSIP. The court shall retain jurisdiction over this transfer to ensure compliance with applicable law.
(5) The plaintiff shall own, take and have, free of any claims of the defendant, the contents of the Norwich home, CT Page 4588 his motor vehicle, his bank accounts, his SSIP (except for the transfer ordered above) and his retirement plan.
(6) The defendant shall own, take and have, free of any claims of the plaintiff, her mother's inheritance, her motor vehicle, and the personal property now in her possession.
(7) Each shall pay the liabilities shown on their respective financial affidavits.
(8) The plaintiff shall execute and deliver a promissory note secured by a third mortgage on the Norwich property (otherwise a second mortgage if the equity loan is unsecured) in the amount of $3,000, payable without interest, and due upon the first to occur of the following: his death or remarriage, sale of the premises, or May 1, 1997.
(9) The defendant shall provide the plaintiff with a release of the lis pendens on the Norwich premises.
(10) The plaintiff shall pay the arrearage of $600 at the rate of $25 per week, until paid, and the medical bills of $366 within 120 days hereof.
(11) Any net refunds over tax liabilities shall be divided equally; any net tax liability over the refunds shall be shared equally.
(12) The plaintiff shall pay towards the defendant's counsel fees the sum of $500 within 120 days hereof.
(13) All documents of title and other instruments necessary or incidental to the effectuation of these orders shall be completed, executed and exchanged within 30 days hereof.
Teller, J.